**Lester EICHELBERGER,
Defendant-Appellant.**

v.

**STATE of Missouri, Plaintiff-Respondent.**

**No. 36219.**

Missouri Court of Appeals,
St. Louis, District, Division Three.

June 17, 1975.

Richard A. Fredman, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Neil N. Bernstein, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

McMILLIAN, Judge.

This is an appeal from a judgment of conviction entered on a jury verdict in the Circuit Court of the City of St. Louis finding defendant guilty of robbery first degree with a dangerous and deadly weapon and fixing the punishment at fifteen years imprisonment. § 560.120 and § 560.135 RSMo 1969, V.A.M.S. Defendant raises three points on appeal: (1) that the State failed to properly establish the venue (2) that the State failed to prove the defendant's commission of the offense beyond a reasonable doubt and (3) that certain statements by the prosecutor amounted to prejudicial comments on the defendant's failure to testify. For reasons set forth herein, each point is decided against the appellant; therefore, we affirm the judgment entered by the trial court. Because the defendant challenges the sufficiency of the evidence, we have set out the evidence in a detailed narrative form.

At approximately 12:40 P.M. on August 26, 1973, two armed men, with stocking caps over their faces, robbed Evans' Confectionary. In the store at the time were Steven Evans, the proprietor, and James Johnson, his 13-year old helper. At the trial, both Evans and Johnson described the holdup in essentially the same manner. One of the robbers was described as a large, heavy man wearing blue jeans and a black and white checked shirt and who was carrying a derringer. The one robber was described as shorter and thinner than the other robber, who wore blue jeans and a dark blue sweatshirt and carried a sawed-off shotgun. This shorter robber was later identified as the defendant. The slender man grabbed Johnson and held the shotgun on Evans; the larger man put his derringer to Evans' head and threatened to blow it off unless Evans opened the cash drawer. The larger man took everything out of the drawer including a dollar bill which had been taped together by Evans and a metal slug which had been in the cash register

ever since Evans bought the store. The heavier robber also took $75.00 in cash from Evans' pocket and Evans' gun from under the counter. During the course of the robbery, the smaller robber said: "I ought to kill you because you drew a pistol on me." Evans testified that this statement jogged his memory because he had only pulled a gun on one person in the store. That incident arose some time earlier and involved the defendant Eichelberger. Evans also recognized the stature and voice of the slender robber as Eichelberger's because he had been in the store nearly every day to shop. Johnson also remembered the slender robber's statement about wanting to kill Evans. After the robbery, the two men left the store and fled around the corner on Lincoln Street.

When a policeman arrived, he drove Johnson around the neighborhood to look for the robbers. As Johnson and the policeman approached Lincoln Street, Johnson spotted a heavy man on a second floor porch taking off a shirt like one of the persons wore during the robbery. Other policemen were called. The police went inside the house and took five occupants, including the defendant, into custody. The police recovered from the house three guns of the same type involved in the robbery, a metal slug identified as the one from Evans' cash register, a taped dollar bill and some coins and currency from a chair in which one of the occupants was sitting. Search of the defendant revealed $36.50 in cash.

The defense called three witnesses. First, Noel Bernaugh testified that he was standing on a porch two doors from the store at the time of the robbery and got a sideview of two men without masks running across the street. He was unable to identify either man though he knew Eichelberger. Randy Robinson testified that he was the manager of a store at 4000 Lincoln Street, one block away from Evans' store. It was on the second floor of Robinson's

building that the defendant was taken into custody. Robinson testified that the defendant had walked up the street alone, asked Robinson whether his brother was home and then entered the house a few minutes before the police arrived. The final witness for the defense, Steven Dazig, testified that he employed the defendant on a part-time basis and that the defendant had been paid about $54.00 four days before the robbery.

In closing argument, the defense attorney argued, referring to the testimony of Mr. Dazig:

". . . Does that sound logical to you that someone who is working and getting paid every week, or every two weeks is going to go in and rob some place? No, it doesn't. . . ."

In rebuttal closing argument, the state's attorney made the following statement which defendant claims amounts to the violation of his rights:

"Let's look here as to the theories of innocence here. . . . Number two, a person who works is never going to rob, steal, or do anything. . . . Now with regard to, you know, the fact that Mr. Eichelberger apparently has worked during that prior week *you don't know what his needs are, you don't know what his desires are, you don't know anything along those lines. You don't know if he owed money, if he already got rid of the other money. . . ."* (Emphasis added.)

■ Defendant first contends that the state failed to prove the venue of the offense. Section 541.033 RSMo 1969, V.A. M.S., the state statute parallel to the Sixth Amendment of the U. S. Constitution, does require that the trial be held in the district where the crime has been committed. Venue must be proven but it is not an integral part of the offense. Therefore, venue need not be proven beyond a reasonable doubt or

by direct evidence, rather it can be inferred from all of the evidence, State v. Valentine, 506 S.W.2d 406, 410 (Mo.1974); State v. Garrett, 416 S.W.2d 116, 118 (Mo.1967). In the present case, the jury could reasonably have found from the testimony of James Johnson and Officer Allen that they met in front of the store at 4069 Lincoln Street in the City of St. Louis and from the testimony of defendant's witness, Bernaugh, that he was only two doors down from the scene of the robbery at 4063 Lincoln Street in the City of St. Louis, that the robbery occurred in the City of St. Louis. Instruction No. 6 given by the court required a verdict of guilty to be premised on a finding that the offense transpired in the City of St. Louis. The jury so found. The evidence supports the jury's finding.

■ Alternatively, the court has long recognized its authority to ". . . take judicial notice of county lines, the locations of towns. . . ." State v. Garrett, supra, at 119; State v. Kenyon, 343 Mo. 1168, 126 S.W.2d 245 (1938) and State v. Ruckman, 222 S.W.2d 74 (Mo.1949). Official maps of the City of St. Louis indicate that the locations described in the testimony as surrounding the store are some miles away from the boundaries of the City of St. Louis.

■ Defendant also contends that the evidence advanced by the state was insufficient to prove the commission of the robbery beyond a reasonable doubt. It is important to remember that this was jury verdict in this case. In that situation—

". . . Our function is not to substitute our judgment for that of the jury, but we determine only whether the evidence, considered in the light most favorable to the state and all inferences therefrom, disregarding evidence to the contrary, is sufficient to make a submissible case. . . . If there is substantial evidence to support the finding of the jury, it cannot be disturbed on appeal. . . ."

State v. Cain, 507 S.W.2d 437, 438 (Mo.App. 1974) and State v. McCreary, 504 S.W.2d 132, 134 (Mo.App.1973). Defendant's contention that he advanced a strong case in defense is irrelevant because the reviewing court must reject evidence which is contrary to and conflicts with the verdict, State v. McCreary, supra, at 134. Under this standard, the evidence offered by the state is sufficient. The occurrence of a robbery of Evans' store was clearly established by the testimony and is admitted by the defense. The identification of the defendant as the slender robber was established by Evans' recognition of the voice, stature, and language of Eichelberger. Identification by means of a defendant's voice is a permissible method. The fact that Evans had no specialized training in voice identification merely goes to the weight to be given to this identification, State v. Riddle, 324 Mo. 96, 23 S.W.2d 179, 182 (1929) and State v. Preston, 184 S.W.2d 1015, 1016 (Mo.1945). The issue of the weight to be given to the identification creates a question in the province of the jury, not one for the appellate court, State v. Summers, 506 S.W.2d 67, 69 (Mo.App. 1974) and State v. Gantt, 504 S.W.2d 295, 301 (Mo.App.1973). The evidence introduced by the state, therefore, constituted sufficient proof of the commission of an armed robbery by the named defendant.

The final contention of defendant is that certain statements made by the prosecutor in closing argument constituted impermissible references to the defendant's failure to testify.

■ Section 546.270 RSMo 1969, V.A. M.S., consistent with the principles of the Fifth Amendment of the U. S. Constitution, states a general prohibition against references to the defendant's failure to testify. This prohibition is consistent with the decision of the United States Supreme Court in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Missouri courts have interpreted this statutory prohibition to identify a violation of the defendant's rights where the challenged remark constitutes either a direct reference to the defendant's failure to testify or "such indirect reference thereto that it was reasonably apt to have directed the jury's attention to the fact he did not testify? . ." State v. Shields, 391 S.W.2d 909, 913 (Mo. 1965).

■ The prosecutor's statement in the present case does not amount to either a direct or indirect reference. Under the "direct and certain reference" test, State v. Jenkins, 516 S.W.2d 522 (Mo.App.1974) and State v. Overall, 519 S.W.2d 549 (Mo.App. 1975); use of the words "defendant," "accused," and "testify" is crucial, State v. McNeal, 517 S.W.2d 187, 188 (Mo.App.1974). None of these magic words appear in the challenged statement. The indirect reference test requires the court to view the challenged statement in the context in which it appears. As discussed above, the statement by the prosecutor was in response to a prior closing argument by the defense attorney that a person who is earning money will not steal. Read in this context, the statement does not highlight the defendant's failure to testify, rather it merely directs the jury's attention to the weaknesses of the defendant's case. Such an argument is permissible, State v. Hayzlett, 265 S.W.2d 321 (Mo.1951). The situation here is not one in which the defendant was the only person who could testify as to the disposition of the defendant's earnings as in State v. Morgan, 444 S.W.2d 490 (Mo. 1969), or where there was repetition of the comment as in State v. Hardy, 365 Mo. 107, 276 S.W.2d 90 (1955). The prosecutor simply made a general, nonprejudicial comment in closing argument.

Judgment of conviction affirmed.

SIMEONE, P. J., and GUNN, J., concur.